**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**


**JONATHAN MARSHALL, SR.,**

       **Plaintiff,**

   **v.**           **CASE NO. 20-3190-SAC**

**N.C. ENGLISH, et al.,**

       **Defendants.**


**MEMORANDUM AND ORDER**
**AND ORDER TO SHOW CAUSE**

   Plaintiff Jonathan Marshall, Sr., a federal prisoner at the USP Leavenworth – Satellite Camp in Leavenworth, Kansas, at the time of filing, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.  Also before the Court is a Motion for Temporary Restraining Order and Motion for Preliminary Injunction (ECF No. 4).

**I.  Nature of the Matter before the Court**

   Plaintiff filed an almost 700-page document naming more than 140 defendants.  The document is confusing and repetitive, containing copies of portions of previous complaints and petitions filed by Plaintiff with notes added to the copies, a multitude of cross-references, and numerous footnotes.  After reviewing and attempting to decipher the document, it appears that Plaintiff may not have intended it to be a Complaint.  He makes the following statements:

> Above 'Claims in Operative Complaint' . . . is now before the Court for preliminary review action and upon a preliminary injunction with the return of the only full copy of 'lawsuit' . . . then, the plaintiff will file the civil rights complaint.

ECF No. 1, at 138.

> This 'COMPLAINT' is NOT before the Court for preliminary review 28 U.S.C.
> 1915(A)(a) . . . But as stated in the caption . . . : This matter comes before the Court
> upon a motion for temporary restraining order and preliminary injunction using
> defendants: '(1)' – '(20)' . . . by returning: the confiscated legal materials in 'Box-
> 4' and 'Box-5' and a brown-folder marked as 'Lawsuit.'

ECF No. 1, at 147. *See also id.* at 154.

If Plaintiff did not intend his 700-page filing to include a Complaint, Plaintiff should

confirm this in his response to this Order and should provide an Amended Complaint. However,

because the filing includes a completed complaint form and could be construed as a complaint, the

Court has conducted a preliminary review.

Plaintiff alleges he has been the target of a long-running, wide-ranging, "interlocking,"

state and federal civil rights conspiracy. He repeatedly references the "Trinity," which he describes

as a state child support prosecution in Texas and two federal tax prosecutions. Plaintiff asserts

that from the early 1980s to the present, he has been targeted by the Internal Revenue Service using

a national covert counterintelligence program called "COINTELPRO" that the FBI used in the late

1960s. The purpose was to end the "enormous legitimate political, economic, social and

commercial applications" of Marshall. COINTELPRO sought to neutralize, through any means

necessary (sabotage, dirty-tricks, serious prison sentences, even death), an array of Black leaders,

including Plaintiff, who were considered to be potential Messiahs. He alleges he has suffered

years of illegal incarceration as a result. Marshall describes his Complaint as a "civil rights

conspiracy complaint."

Marshall asserts the conspiracy has more recently resulted in the confiscation of two boxes

of litigation materials and a brown folder marked "Lawsuit." He claims he was denied processing

of these "last two boxes of legal materials," Box 4 and Box 5, when he was transferred from FCP-

El Reno to USP-Leavenworth in May of 2018. Reading further, however, it appears Boxes 4 and 5 arrived with the other three boxes in Leavenworth in June of 2018.[1]   It seems Plaintiff was permitted to keep the boxes under his bunk for some period of time. Then, at some point either all of the boxes or only Boxes 4 and 5 were damaged when the room was flooded with water from an overflowing toilet. Plaintiff prepared Boxes 1 through 4 to mail off-site. Boxes 1, 2, and 3 were mailed to a relative in January of 2019, but for some reason, Box 4 was confiscated and moved with Box 5 to the office of the unit counselor, Mr. Rawls, for storage. Apparently, Rawls threatened to destroy the materials at some point. Plaintiff submitted grievances and requests regarding Boxes 4 and 5 to BOP staff, asking to have Box 4 mailed off-site and to have access to Box 5. It appears the responses never addressed his substantive concerns.

Plaintiff also mentions interference with or theft of his legal mail. Plaintiff states, "BOP's delays causing Inmate Marshall 10's-of-1,000's-of-dollars in extra litigation expenses of delays, time with defaults." ECF No. 1, at 60. It is unclear if this is based on the box dispute or occurred previously. He also alleges staff at FCI-El Reno assigned him to RDAP (Residential Drug Abuse Treatment Program) at USP-Leavenworth so they could destroy his legal property and stop his litigation. ECF No. 2-5, at 27.

Plaintiff names more than 140 defendants, ranging from staff members at USP-Leavenworth, FCI-El Reno, and FCI-Big Spring to judges, attorneys, bar associations, former clients, and the State of Texas. He requests the following relief: compensatory damages from each defendant, ranging from $100,000 to $10,000,000; a "temporary restraining order and preliminary injunction to ensure legal activities and stop tacit agreement/conspiracy with BOP, policymakers, bar enterprises, and the government on the questions of applying unfair grounds of

---

[1] Plaintiff also states that some of his legal materials were destroyed upon transfer from Texas to Oklahoma and Oklahoma to Kansas. It is not clear if these were different materials than those contained in the boxes.

litigation," and the return of Box 4 and Box 5 so he can file the lawsuit in the brown folder.  ECF No. 1, at 124.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate.  28 U.S.C. § 1915A(a).  Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  The Complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III.  Discussion

Plaintiff's Complaint is subject to dismissal for the following reasons.

### A.  No Short and Plain Statement of Claim

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief."  "If the complainant fails to comply with Rule 8, a court may dismiss an action with or without prejudice under Fed. R. Civ. P. 41(b)."  *Fletcher v. Raemisch*, 768 F. App'x 825, 826 (10th Cir. 2019).  Although the plain text of Rule 41(b) requires a defendant's motion to dismiss, "the Rule has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute or comply with the rules of civil procedure or court's orders."  *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).

Mr. Marshall's Complaint is very long, repetitive, and exceedingly confusing.  It does not contain a short and plain statement of his claims showing he is entitled to relief.  The Complaint is subject to dismissal on this basis alone.

### B.  Failure to State a Claim

The Complaint also fails to meet the standard for stating an actionable claim set out by the Tenth Circuit: it does not explain what each defendant did to Mr. Marshall; when the defendant did it; how the defendant's action harmed Plaintiff; and what specific legal right Plaintiff believes the defendant violated.  *Nasious*, 492 F.3d at 1163.  The Complaint contains mostly conclusory statements and broad allegations, it makes allegations that fail to cross the line from conceivable to plausible, and it lacks specific facts to demonstrate most of the defendants' personal participation in any alleged deprivation of Plaintiff's constitutional rights.  An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts

or inactions upon which the complaint is based.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997).  Conclusory allegations of involvement are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  The Complaint is therefore subject to dismissal for failure to state a claim.

### C.  Immune and Improper Defendants

The majority of the defendants named by Plaintiff are either immune from liability for damages, are not state actors, are not subject to personal jurisdiction in this Court, or are otherwise improper.

First, the State of Texas is absolutely immune to suit for money damages under the Eleventh Amendment.  Consequently, suits against the State of Texas are barred, absent consent, regardless of the relief sought.  *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Cory v. White*, 457 U.S. 85, 90-91 (1982); *Trujillo*, 465 F.3d at 1214 n.1.

Plaintiff names twenty-eight (28) judges and court clerks and six (6) prosecuting attorneys as defendants.  "Typically, judges, prosecutors, and witnesses enjoy absolute immunity."  *Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d 1183, 1190 (10th Cir. 2008).  "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  *Imbler v. Pachtman*, 424 U.S. 409, 419 n. 13 (1976).  "The Supreme Court of the United States has long held that judges are generally immune from suits for money damages."  *Stein*, 520 F.3d at 1195 (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)).  Prosecutors are absolutely immune from civil liability for damages for "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his

role as an advocate for the State." *Id.* at 1193 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 209 (1993)).

Plaintiff names fifty-seven (57) defendants whom he describes as "Client/Associate/Stakeholder." He also names two presidents of bar associations. As noted, to state a claim under § 1983, a plaintiff "must show that the alleged (constitutional) deprivation was committed by a person acting under color of state law." *West*, 487 U.S. at 48–49 (1988); *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Northington*, 973 F.2d at 1523. The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action." *West*, 487 U.S. at 42; *Polk County v. Dodson*, 454 U.S. 312 (1981). Thus, it is of no consequence how discriminatory or wrongful the actions a plaintiff may describe; merely private conduct does not satisfy the "under color of" element and therefore no section 1983 liability exists. See *Brentwood Academy v. Tennessee Secondary Athletic Ass'n*, 531 U.S. 288, 294–96 (2001); *American Manufs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1208 (10th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006). Plaintiff's former clients or associates are not state actors and therefore are not proper defendants to a civil rights claim.

Plaintiff names fourteen (14) private or appointed defense lawyers and investigators as defendants. A criminal defense attorney is also not a state actor. *Polk County v. Dodson*, 454 U.S. 312 (1981).

Plaintiff names the United States and federal agencies as defendants. "A *Bivens* claim can be brought only against federal officials in their individual capacities and cannot be asserted

directly against the United States, federal agencies, or federal officials acting in their official capacities." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (citing *Farmer v. Perrill*, 275 F.3d 958, 963 (10th Cir. 2001) and *F.D.I.C. v. Meyer*, 510 U.S. 471, 485–86 (1994)).

Finally, Plaintiff names twenty-three (23) defendants who work at FCI-El Reno in Oklahoma or FCI-Big Spring in Texas.  It appears from the face of the complaint that the Court lacks personal jurisdiction over these defendants, and they are subject to dismissal from this action.[2]

To exercise personal jurisdiction over a nonresident defendant, the Court must ensure that "the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state," and that the due process requirements of the Constitution are satisfied.  *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.,* 17 F.3d 1302, 1304-05 (10th Cir. 1994).  The Kansas long-arm statute has been interpreted by Kansas courts "to allow jurisdiction to the full extent permitted by due process," such that these inquiries are, for all practical purposes, duplicative.  *Id.* at 1305.

The exercise of jurisdiction over a nonresident defendant comports with due process "'so long as there exist minimum contacts between the defendant and the forum State.'" *Trujillo*, 465 F.3d at 1217-18 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980)). For a court to exercise "general" personal jurisdiction over a defendant, he must have continuous and systematic contacts with the forum state.  *Arocho v. Lappin*, 461 F. App'x 714, 717 (10th Cir. 2012) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011) (explaining and contrasting general and specific personal jurisdiction)). The minimum contacts required for "specific" personal jurisdiction may be established where "the defendant has 'purposefully

---

[2] Under § 1915, the Court may consider personal jurisdiction and venue *sua sponte* "when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Fratus v. Deland,* 49 F.3d 673, 674–75 (10th Cir. 1995)(quotations, alterations omitted)).

directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)).

It does not seem likely that any of these 23 defendants had the kind of continuous and systematic contacts with Kansas to support the exercise of "general" personal jurisdiction over them.  They do not reside in, work in, or have direct control over the operation of any prison facility in the State of Kansas.  Nor does it appear they should be subject to the Court's "specific" personal jurisdiction.  There are no allegations that they "purposefully directed" activities toward Kansas that gave rise to Plaintiff's injury.  *See Arocho v. Nafziger,* 367 F. App'x 942, 949–50 (10th Cir. 2010) (following analysis of this condition for specific jurisdiction in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.,* 514 F.3d 1063, 1071–72 (10th Cir. 2008)).  As a result, the Court appears to lack personal jurisdiction over these defendants.

All of the defendants discussed above are subject to dismissal from this action.

**D.  Statute of Limitations**

The statute of limitations applicable to § 1983 and *Bivens* actions is determined from looking at the appropriate state statute of limitations and tolling principles.  *See Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Logan v. United States*, 272 F. Supp. 2d 1182, 1185 (D. Kan. 2003).  "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983.  In Kansas, that is the two-year statute of limitations in K.S.A. § 60-513(a)."  *Brown v. Unified School Dist. 501, Topeka Public Schools*, 465 F .3d 1184, 1188 (10th Cir. 2006)(citations omitted); *see United States v. Kubrick*, 444 U.S. 111, 120 (1979); *Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991).  The same two-year statute of limitations governs actions under *Bivens*.  *See Logan,* 272 F. Supp. 2d at 1185.

A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Fogle v. Pierson*, 435 F.3d 1252, 1258-59 (10th Cir. 2006)(citing *Jones v. Bock*, 549 U.S. 199, 214 (2007)), *cert. denied*, 549 U.S. 1059 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009). Plaintiff claims his Complaint covers a period spanning more than thirty (30) years. Any claim that accrued prior to July 16, 2018 is barred by the limitations period unless tolling applies.

## IV. Response Required

For the reasons stated herein, Plaintiff's Complaint is subject to dismissal under 28 U.S.C. §§ 1915A(b) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why his Complaint should not be dismissed. Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

## V. Motion for Injunctive Relief (ECF No. 4)

Plaintiff filed a motion asking the Court for injunctive relief ordering the USP-Leavenworth defendants to return Box 4, Box 5, and a brown folder containing his litigation materials. Since Plaintiff filed his Complaint, he has been released from USP-Leavenworth.

A movant seeking a preliminary injunction to remedy an alleged constitutional violation must establish "four factors: (1) a likelihood of success on the merits [of his described claim]; (2) a likelihood that [he] will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [his] favor; and (4) that the injunction is in the public interest." *White v. Kansas Dep't of Corr.*, 617 F. App'x 901, 904 (10th Cir. 2015) (*quoting RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1208 (10th Cir. 2009)). "To constitute irreparable harm, an injury must be

certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal and he has not established a likelihood of irreparable harm.  At this point in the proceedings, the Court has directed Plaintiff to show cause why his Complaint should not be dismissed for the reasons explained above.  For this reason, Plaintiff's motion for injunctive relief is denied at this time.

Further, as Plaintiff has been released from USP-Leavenworth, it is likely his documents were returned to him upon release thus making his motion moot.  If this is not the case, Plaintiff may so inform the Court and refile his motion with any necessary update.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **April 29, 2021**, in which to show good cause, in writing, why his Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction and Motion for Temporary Restraining Order (ECF No. 4) is **denied**.

**IT IS SO ORDERED.**

DATED: This 29th day of March, 2021, at Topeka, Kansas.


s/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge